Hyman RAFFE, individually and on behalf of Puccini Clothes, Ltd., Plaintiff,

v.

"JOHN DOE," true name unknown to plaintiff but person or persons intended to be those who published and/or distributed certain material on or about July 26, 1984; Hon. Donald Diamond; Hon. Xavier C. Riccobono; Hon. Michael J. Dontzin; Hon. Thomas V. Sinclair, Jr.; Hon. Robert Abrams; David S. Cook; Citibank, N.A., and Jerome H. Barr, individually, and as executors of the Estate of Milton Kaufman; Kreindler & Relkin, P.C.; Lee Feltman; Feltman, Karesh & Major; Arutt, Nachamie, Benjamin, Lipkin & Kirschner, P.C., Defendants.

No. 84 Civ. 6272 (WCC).

United States District Court,
S.D. New York.

Oct. 11, 1985.

Robert Abrams, Atty. Gen. of N.Y., New York City, for defendants Donald Diamond, Xavier C. Riccobono, Michael J. Dontzin, Thomas V. Sinclair, Jr., Robert Abrams, and David S. Cook; Jeffrey I. Slonim, Howard L. Zwickel, Asst. Attys. Gen., of counsel.

Kreindler & Relkin, P.C., New York City, defendants pro se and for defendants Citibank, N.A. and Jerome H. Barr; Michael J. Gerstein, Edward Weissman, of counsel.

George Sassower, Brooklyn, N.Y., for plaintiff.

Feltman, Karesh & Major, New York City, defendants pro se and for defendant Lee Feltman; Donald F. Schneider, of counsel.

D'Amato & Lynch, New York City, for defendant Arutt, Nachamie, Benjamin, Lipkin & Kirschner, P.C.; Robert E. Meschel, Timothy P. Butler, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiff Hyman Raffe ("Raffe") is a shareholder of Puccini Clothes, Ltd. ("Puccini"), a New York corporation dissolved and placed in receivership by the New York Supreme Court. Raffe brought this action under 42 U.S.C. § 1983 (1982) alleging that various participants in the corporate dissolution and receivership proceedings in that court have violated and continue to violate his civil rights. He has named as defendants in this suit Lee Feltman, Esq. ("Feltman"), the court-appointed receiver for Puccini; Feltman, Karesh & Major ("the Feltman firm"), counsel to the receiver; Citibank, N.A. and Jerome H. Barr, executors of the estate of Milton Kaufman, a Puccini shareholder; Kreindler & Relkin, P.C., attorneys for the executors; Arutt, Nachamie, Benjamin, Lipkin & Kirschner, P.C. ("the Arutt firm"), attorneys for Eugene Dann and Robert Sorrentino, also Puccini shareholders; two justices, an administrative law judge, and a referee of the New York Supreme Court who have, at one time or another, presided over the dissolution and receivership proceedings; Robert Abrams, Esq., the Attorney General of the State of New York, and David Cook, Esq., an Assistant Attorney General, who have represented these judges in prior actions brought by Raffe; and one allegedly unknown person referred to as "John Doe."

As best I can discern from the rambling, and at times incomprehensible, 73-page complaint, Raffe contends that Feltman, the Feltman firm, the executors of the estate of Milton Kaufman, the attorneys for the executors, and the Arutt firm, conspired to and did take "possession and control of Puccini, its assets and affairs, and began to dissipate its assets and affairs as suited their individual and joint private purposes." Complaint ¶ 21. Raffe further contends that this conspiracy was successful only with the cooperation or inaction of the various judges who oversaw the dissolution as well as the Attorney General and his staff.

Raffe seeks damages and wide-ranging injunctive relief, including an order nullifying all state court proceedings since June 4, 1980 with respect to Puccini, or in the alternative, an order (1) enjoining the defendant judges from "interfer[ing] with the judicial process"; (2) declaring "null and void" the appointments of the court-appointed attorneys and accountants for the receiver; (3) prohibiting the receiver and the attorneys for the Puccini shareholders "from taking positions in the judicial forum contrary to the legitimate interests of their clients, former client, and/or trust"; (4) "prohibiting conduct which interferes with plaintiff's absolute right to access to the court and/or the appropriate jurist"; (5) declaring "null and void" all proceedings before the referee of the Supreme Court appointed to oversee the dissolution proceedings; (6) nullifying the Supreme Court's disqualification of George Sassower, Esq. ("Sassower") as plaintiff's attorney in all state court actions related to the dissolution of Puccini Clothes; (7) prohibiting Attorney General Abrams and Assistant Attorney General Cook from "representing conflicting interests"; and (8)

awarding attorney's fees to plaintiff. Complaint ¶ 3.

This matter is now before the Court on a variety of motions. The defendant judges, Attorney General Abrams, and Assistant Attorney General Cook, collectively referred to below as the "state defendants," have moved for (1) an order pursuant to Rule 12(b)(6), Fed.R.Civ.P., dismissing the complaint on the ground that the action against them is barred under the doctrines of *res judicata* and collateral estoppel by Judge Nickerson's recent decision in *Raffe v. Citibank, N.A.*, No. 84 Civ. 305 (E.D. N.Y. Aug. 1, 1984); (2) an order pursuant to Rule 12(b)(1), Fed.R.Civ.P., dismissing the complaint against them on the ground that the Court lacks subject matter jurisdiction over this matter; (3) an order pursuant to Rule 12(b)(6) dismissing the complaint on the ground that it fails to state a claim upon which relief can be granted; and (4) an order pursuant to 42 U.S.C. § 1988 assessing against Raffe and his attorney, George Sassower, the reasonable attorney's fees incurred by the state defendants in defending this action.

Feltman, the Feltman firm, the executors of the estate of Milton Kaufman, the attorneys for the executors, and the Arutt firm, collectively referred to below as the "private party defendants," have moved for (1) an order pursuant to Rule 56, Fed.R.Civ.P., granting summary judgment in their favor on the ground that the action against them also is barred under the doctrines of *res judicata* and collateral estoppel by Judge Nickerson's recent decision in *Raffe v. Citibank, N.A.* and previous state court decisions; (2) in the alternative, an order pursuant to Rule 12(b)(6), Fed.R.Civ.P., dismissing the complaint against them on the ground that it fails to state a claim upon which relief can be granted; (3) an order pursuant to 28 U.S.C. § 1651 (1982) permanently enjoining Raffe and Sassower from commencing further actions in any federal court arising out of or related to the Puccini dissolution or receivership; and (4) an order pursuant to 42 U.S.C. § 1988 and Rules 11 and 56, Fed.R.Civ.P., assessing against Raffe and Sassower the reasonable

attorney's fees incurred by these defendants in defending this action.

In response to these motions, Raffe has submitted only Sassower's affidavit reiterating the vague and conclusory allegations of the complaint. Raffe has also twice cross-moved for summary judgment on conclusory allegations, unsupported by the materials called for by Rule 56(e), Fed. R.Civ.P. For the reasons stated below, defendants' motions are granted and plaintiff's motions are denied.

*Background*

As Judge Nickerson noted in his opinion in *Raffe v. Citibank, N.A.*, 84 Civ. 305 (E.D.N.Y. Aug. 1, 1984), the parties to this action come to the federal courts with an "already long and tortured history of litigation in the New York State courts." *Id.*, slip op. at 3. Judge Nickerson reviewed the many lawsuits between these parties in his opinion, and I refer those unfamiliar with this matter to his decision for more of the unpleasant details of this saga. Except for the facts set forth below, I have attempted to avoid repeating his discussion here.

At one time, Raffe, Milton Kaufman ("Kaufman"), Eugene Dann ("Dann"), and Robert Sorrentino ("Sorrentino") were each 25% shareholders in Puccini Clothes, Ltd. Kaufman, who was president and a director of the corporation, died in 1979. After Kaufman's death, the remaining shareholders failed to call a meeting to elect a successor director, a violation of the shareholders' agreement. In addition, they failed to implement a provision in the shareholders' agreement for the disposition of Kaufman's shares. Finally, the shareholders, allegedly led by Raffe and Sassower, refused to allow Puccini to pay obligations that Kaufman had guaranteed. As a result, Kaufman's estate was diminished.

In 1980, the executors of Kaufman's estate petitioned the New York Supreme Court for Puccini's dissolution pursuant to New York Business Corporation Law § 1104 on the ground that the shareholders had failed to comply with the shareholders'

agreement. The court granted the dissolution on June 4, 1980, and appointed John V. Lindsay ("Lindsay") as receiver. Raffe appealed the court's order; it was unanimously affirmed by the Appellate Division, First Department.

Both before and after the dissolution proceedings, the executors of Kaufman's estate brought actions in the state courts against Raffe and the other shareholders to recover those amounts that Kaufman's estate had paid on Puccini's obligations. The estate won judgments against Raffe for more than $350,000, and Raffe in turn obtained awards against the other shareholders and against the corporation itself. Raffe also brought an action in New York Supreme Court against the executors of Kaufman's estate alleging that they had damaged Puccini by their actions. The court dismissed the suit; the Appellate Division, First Department unanimously affirmed.

In January 1981, Lindsay declined his appointment as Puccini's receiver, and Raffe moved the Supreme Court to have himself made receiver. In February 1981, the court denied Raffe's motion, and appointed defendant Lee Feltman. At the same time, the court disqualified Sassower from representing Raffe in all related state court proceedings due to a conflict of interest caused by his previous representation of Dann and Sorrentino. Sassower has apparently continued to represent Raffe in state court despite that order, and as a result, both Raffe and Sassower were recently held in contempt of court. *See* Affidavit of Donald F. Schneider, Esq. in Support of Defendants' Motion for Summary Judgment ¶ 6.

Raffe and Sassower evidently were not discouraged by their defeats, and renewed their efforts to undo the dissolution and receivership proceedings. Feltman has averred, and plaintiff has not denied, that in the period since Feltman was appointed receiver, Raffe and Sassower have made more than 100 motions in the state courts in connection with the Puccini litigation. Raffe has, for example: (a) sought on nine separate occasions to remove Feltman as receiver; (b) sought on several occasions to have the Feltman firm disqualified and/or discharged as attorneys for the receiver or to deny the firm compensation for the legal services it has rendered; (c) sought on numerous occasions to have the lawyers and co-executor of the estate of Milton Kaufman disqualified; and (d) sought on several occasions to have various justices who ruled adversely to plaintiff recuse themselves or be disqualified. Affidavit of Lee Feltman, Esq. in Support of Defendants' Motion for Summary Judgment ¶ 6. The state courts have consistently denied these motions, and at least twice have imposed on Raffe extraordinary costs and attorney's fees. *Id.* & n. *; id.* Exhs. F, G.

Unsuccessful in these efforts, Raffe and Sassower apparently thought it fruitful to commence more lawsuits. First, they brought suit in New York Supreme Court against the Feltman firm and the Arutt firm alleging that they acted improperly in representing the receiver and Dann and Sorrentino, respectively. The Supreme Court granted the Feltman firm's motion to dismiss the complaint, and the Appellate Division, First Department affirmed. The court reserved decision on the Arutt firm's motion to dismiss pending a determination of whether the complaint had been timely served.

Perhaps hoping they would obtain better results in a different forum, Raffe and Sassower turned their litigative energies to the federal courts, and filed an action in the United States District Court for the Eastern District of New York. In that case, *Raffe v. Citibank, N.A.*, No. 84 Civ. 305 (E.D.N.Y. Aug. 1, 1984), Raffe sued all of the participants in the dissolution and receivership proceedings, including nearly all of the defendants named in this case, contending, as he has here, that they "performed acts and/or conspired to take control of Puccini and 'dissipate its assets and affairs as suited their individual and joint private purposes,' and to conceal these alleged unlawful activities by having deceptive financial reports prepared, so as to

deprive him of his constitutional rights." *Id.*, slip op. at 7. Raffe sought $50,000 in compensatory and punitive damages, the removal of Feltman as receiver of Puccini Clothes, and the removal of the pending state court actions to "a constitutional and appropriate forum meeting federal standards." *Id.*, slip op. at 2.

Judge Nickerson issued an opinion dismissing Raffe's complaint on August 1, 1984. He held that the action against the state court judges and the Attorney General was barred by the Eleventh Amendment and the doctrine of judicial immunity, and ruled that "[i]n the absence of a viable federal issue," Raffe's request that the state court proceedings be removed to federal court had to be denied. *Id.*, slip op. at 10.

In addition, Judge Nickerson held that the action against the private party defendants was barred by the doctrines of *res judicata* and collateral estoppel. Judge Nickerson stated that Raffe's "allegations here are basically indistinguishable from those presented in state court in his unsuccessful efforts to remove Feltman as receiver and compel the other defendants to account for Puccini's assets." *Id.*, slip op. at 15. Judge Nickerson concluded that in view of his "duplicative motions and appeals" in the state courts, Raffe had already enjoyed "a full and fair opportunity to litigate his position," and could not relitigate his claims in federal court. *Id.*, slip op. at 14–16.

Finally, Judge Nickerson granted both the state and private party defendants' motions for attorney's fees, imposing liability for those fees equally on Raffe and Sassower. He stated that Sassower "knew, or should have known, that plaintiff would be precluded from litigating his claims in this court," that Sassower had framed the complaint in conclusory terms and had failed to substantiate those conclusions, and that Sassower had conducted the litigation in a "vexatious" manner. *Id.*, slip op. at 18. The Court of Appeals for the Second Circuit affirmed Judge Nickerson's decision without opinion on January 23, 1985.

Less than one month after Judge Nickerson dismissed Raffe's complaint in the Eastern District, Raffe and Sassower filed the instant case in the Southern District. The Court held a pre-motion conference and gave all of the defendants leave to file motions to dismiss or for summary judgment as well as leave to file motions for a permanent injunction. Shortly thereafter, Raffe and Sassower filed new actions in the state courts.

Faced with these additional state court actions, the defendants moved the Supreme Court, Special Term for a permanent injunction enjoining Raffe and Sassower from filing any more suits in the state courts. On January 23, 1985, Special Term granted the motion, and entered a broad injunction enjoining Raffe, Sassower, and any other persons acting in concert with them, from bringing any new actions in the state courts arising out of or related to the Puccini dissolution or receivership. See Attachment to Letter of Donald F. Schneider, Esq. dated January 24, 1985. Unfazed, Raffe, Sassower, and a new actor in the drama, Sam Polur, Esq. ("Polur") filed at least ten actions in New York Supreme Court related to the Puccini dissolution. Supplemental Affidavit of Donald F. Schneider, Esq. dated May 31, 1985, ¶ 4. For this, Special Term subsequently found Sassower guilty of criminal contempt of court. *Id.* ¶ 3; *id.* Exh. B.

While that activity was going on in the state courts, Raffe, Sassower, and Polur commenced three more actions in this Court, all of which were referred to me as related to this case.[1] I stayed the prosecution of those suits pending resolution of the instant motions.

---

1. These related actions are: *Puccini Clothes, Ltd. v. Murphy*, No. 85 Civ. 3712 (WCC) (S.D.N.Y. filed May 16, 1985); *Raffe v. Riccobono*, No. 85 Civ. 3927 (WCC) (S.D.N.Y. filed May 23, 1985); *Raffe v. Relkin*, No. 85 Civ. 4158 (WCC) (S.D.N.Y. filed June 3, 1985). Sam Polur joined Raffe and Sassower as a plaintiff only in the last two cases listed.

*Discussion*

A. *Res Judicata* and Collateral Estoppel

I turn first to the defendants' motions to dismiss the complaint and for summary judgment on the ground that this action is barred under the doctrines of *res judicata* and collateral estoppel by Judge Nickerson's decision in *Raffe v. Citibank, N.A.* These doctrines generally prohibit a party from relitigating claims or issues that were resolved in prior lawsuits. They are "founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court." *Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946). In short, these doctrines "reflect[ ] the refusal of law to tolerate needless litigation." *Angel v. Bullington,* 330 U.S. 183, 192–93, 67 S.Ct. 657, 662–63, 91 L.Ed. 832 (1947).

■ The Supreme Court has removed any doubt that the doctrines of *res judicata* and collateral estoppel apply to actions brought under § 1983. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 96–97, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). In *Migra,* the Court held that the preclusive effect of a state court judgment is measured by reference to state law; however, it is widely recognized that the determination of the scope of a federal court judgment is governed by federal law. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4466, at 617–18 (1981). Accordingly, I look to the principles of *res judicata* and collateral estoppel as applied in the federal courts to determine the preclusive effect of Judge Nickerson's decision.

The Supreme Court has issued numerous decisions in recent years articulating the fundamental principles of these two doctrines. The Court has stated that under the doctrine of *res judicata,* also known as

claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428–29, 69 L.Ed.2d 103 (1981); *Allen,* 449 U.S. at 94. In other words, "the parties to the suit ... are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (quoting *Cromwell v. County of Sac,* 4 Otto 351, 352, 94 U.S. 351, 352, 24 L.Ed. 195 (1877)). The Court has stated that under the related doctrine of collateral estoppel, or issue preclusion, a party is barred from relitigating "issues that were actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 n. 5 (1979); *see also Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

■ I have reviewed the complaint in this case and have compared it to the complaint filed in *Raffe v. Citibank, N.A.* On the basis of that review, I think it plain that the instant action is barred by the principles of *res judicata* and collateral estoppel set out above. The complaint in this action does no more than rehash the allegations put before Judge Nickerson. It is clear that Raffe and Sassower have merely attempted to revive issues that Judge Nickerson expressly held were without merit or barred by prior decisions in the state courts.

Notwithstanding this obvious conclusion, Raffe and Sassower argue that the complaint in this case substantially differs from that before Judge Nickerson because it alleges five "subsequently arising or discovered facts." Affirmation of George Sassower, Esq. in Opposition to Defendants' Motions at 6–7. However, the defendants have shown in careful detail that

each one of these "facts" was fully litigated before Judge Nickerson and rejected. *See* Reply Affidavit of Michael J. Gerstein, Esq. dated December 10, 1984, ¶¶ 3–14 [hereinafter cited as "Gerstein Reply Aff."]; Reply and Supplemental Affidavit of Donald F. Schneider, Esq. dated December 10, 1984, ¶¶ 3–15. Indeed, Raffe and Sassower argued in a brief to the Court of Appeals for the Second Circuit that Judge Nickerson's decision should be reversed *precisely because* Judge Nickerson had considered at least some of these "facts" in reaching his decision. *See* Gerstein Reply Aff., Exh. E at 5, 14, 42–44. Thus, it is painfully clear that this suit is essentially the same as *Raffe v. Citibank, N.A.,* and there can be no doubt that it is barred under the doctrines of *res judicata* and collateral estoppel. Accordingly, defendants' motions to dismiss and for summary judgment are granted. This result renders moot Raffe's motions for summary judgment, and they are denied.

■ In addition, I have reviewed the complaints in the three related actions pending before the Court. For the most part, these too merely restate the complaint that was before Judge Nickerson. However, these complaints also allege certain improprieties by state court judges in connection with the Puccini proceedings after the date of Judge Nickerson's decision in *Raffe v. Citibank, N.A.* Since these alleged misdeeds occurred after Judge Nickerson's decision, they were not and could not have been litigated in that action. However, all of these alleged improprieties apparently could have been, and perhaps still can be, reviewed by appeal in the state courts. In view of the apparent availability of direct review in the state courts, it would be wholly inappropriate for this Court to consider them here. Accordingly, the Court on its own motion hereby dismisses the complaints in *Puccini Clothes, Ltd. v. Murphy,* No. 85 Civ. 3712 (WCC) (S.D.N.Y. filed May 16, 1985), *Raffe v. Riccobono,* No. 85 Civ. 3927 (WCC) (S.D.N.Y. filed May 23, 1985), and *Raffe v. Relkin,* No. 85 Civ. 4158 (WCC) (S.D.N.Y. filed June 3, 1985).

## B. Attorney's Fees

I next turn to the defendants' motions for attorney's fees. The Supreme Court has held that a prevailing defendant in a civil rights action may recover costs and fees if the plaintiff's action was unreasonable, frivolous, meritless or vexatious. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 420, 98 S.Ct. 694, 699–700, 54 L.Ed.2d 648 (1978); *see also Carrion v. Yeshiva Univ.,* 535 F.2d 722, 727 (2d Cir. 1976). The Court has indicated that such fees may be awarded "to protect defendants from burdensome litigation having no legal or factual basis." *Id.; see also Gerena-Valentin v. Koch,* 554 F.Supp. 1017, 1021 (S.D.N.Y.1983), *aff'd,* 739 F.2d 755 (2d Cir.1984).

■ From the discussion above, it is overwhelmingly clear that this suit is entirely without merit and that it has no basis in law or fact. Moreover, in view of Judge Nickerson's recent decision, to say nothing of the five-year history of duplicative state court proceedings, it is inconceivable that Raffe and Sassower had any legitimate purpose in instituting this action. Their only apparent aim was to harass the defendants in some desperate hope that they will eventually tire of defending lawsuits and surrender Puccini and its assets. This is nothing more than blackmail by litigation, and the Court will not tolerate it.

For these reasons, the defendants' motions for attorney's fees are granted. Raffe and Sassower are to share equally the burden of paying the attorney's fees incurred in defending this action, and are held jointly and severally liable for that amount.[2] The defendants are directed to submit affidavits detailing the hours spent, fees sought, and costs incurred in defending this suit.

## C. Injunctive Relief

Finally, I turn to the private party defendants' motion for a permanent injunc-

---

**2.** There is no evidence before the Court to determine whether Polur played any role in this lawsuit, and accordingly I do not impose the burden of defendants' attorney's fees on him.

tion enjoining Raffe and Sassower from commencing any further actions in federal court arising out of or related to the Puccini dissolution and receivership. It is well-settled that a federal court has the power to issue such relief; indeed, a court has an obligation to do so when necessary to protect the public and the efficient administration of justice from vexatious litigants. *In re Martin-Trigona,* 737 F.2d 1254, 1262 (2d Cir.1984).

The Court of Appeals for the Second Circuit has held that "the traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant." *Id.* Instead, "[a] history of litigation entailing 'vexation, harassment and needless expense to [other parties]' and 'an unnecessary burden on the courts and their supporting personnel' is enough." *Id.* (quoting *In re Hartford Textile Corp.,* 681 F.2d 895, 897 (2d Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983)).

■ Of course, barring a litigant from the courthouse is a serious matter, "for 'access to the Courts is one of the cherished freedoms of our system of government.'" *Kane v. City of New York,* 468 F.Supp. 586, 590 (S.D.N.Y.), *aff'd mem.,* 614 F.2d 1288 (2d Cir.1979) (quoting *Ex parte Tyler,* 70 F.R.D. 456, 457 (E.D.Mo. 1976)). However, on the record before me, I am convinced that any measure short of an injunction will be ineffective in preventing Raffe and Sassower from using the federal courts as vehicles for harassment. It is clear that Judge Nickerson's imposition of attorney's fees in dismissing the suit in the Eastern District did not sufficiently impress upon Raffe and Sassower the inappropriateness of their behavior. Moreover, now that the Supreme Court, Special Term has enjoined Raffe and Sassower from commencing any suits in the state courts, the federal courts will undoubtedly become their forum of choice. Accordingly, the private party defendants' motion is granted, and it is hereby

ORDERED, that Hyman Raffe, George Sassower, Esq., and all those acting in concert or cooperation with either of them, are permanently enjoined and restrained from filing or serving, or attempting to intervene in or initiate any action or proceeding in any federal court or tribunal against:

(a) Lee Feltman, individually or as Receiver for Puccini Clothes, Ltd., or

(b) Feltman, Karesh & Major, or

(c) Citibank, N.A. and Jerome H. Barr, individually or as executors of the Estate of Milton Kaufman, or

(d) Kreindler & Relkin, P.C., or

(e) Arutt, Nachamie, Benjamin, Lipkin & Kirschner, P.C., or

(f) any representative, member, employee, associate, or affiliate of any of the above parties,

the subject matter of which arises out of or relates to:

(1) the actions or conduct of Puccini Clothes, Ltd., or its shareholders, officers, directors, or employees, or

(2) the judicial dissolution or the receivership of Puccini Clothes, Ltd., or

(3) the conduct of the Receiver for Puccini Clothes, Ltd., or the representation of the Receiver by Feltman, Karesh & Major, or

(4) the litigations related to or arising out of any of the matters set forth in subparagraphs (1) through (3) herein, including, but not limited to any litigation arising out of or relating to the right of the Estate of Milton Kaufman to enforce any aspect of the guarantees executed by Hyman Raffe, or

(5) the acts of any litigant or the attorneys for any litigant in connection with any of the foregoing; it is further

ORDERED, that nothing in this Order shall be construed to deny Hyman Raffe, George Sassower, Esq., or Sam Polur, Esq. the right to seek direct review of this Opinion and Order in the United States Court of Appeals for the Second Circuit and the United States Supreme Court.

*Conclusion*

For all of the reasons set forth above, the state defendants' motion to dismiss the

complaint and the private party defendants' motion for summary judgment are granted, and the Clerk of the Court is directed to dismiss the complaint in this action. In addition, the Clerk is directed to dismiss the complaints in *Puccini Clothes, Ltd. v. Murphy*, No. 85 Civ. 3712 (WCC) (S.D.N.Y. filed May 16, 1985), *Raffe v. Riccobono*, No. 85 Civ. 3927 (WCC) (S.D.N.Y. filed May 23, 1985), and *Raffe v. Relkin*, No. 85 Civ. 4158 (WCC) (S.D.N.Y. filed June 3, 1985).

All of the defendants' motions for attorney's fees are granted, and the defendants are directed to submit affidavits detailing the hours spent, fees sought, and costs incurred in defending this action. Finally, the private party defendants' motion for a permanent injunction is granted as set out above.

SO ORDERED.